IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RODNEY L. BREWINGTON,           )
                                )
            Plaintiff,          )
                                )
        v.                      )
                                )        1:06CV1112
SUNBRIDGE REGENCY NORTH         )
CAROLINA, INC., d/b/a SUNBRIDGE )
CARE & REHABILITATION FOR       )
THE TRIAD,                      )
                                )
            Defendant.          )
_____ )

MEMORANDUM ORDER

This case arises out of a dispute between Plaintiff Rodney L. Brewington and

his former employer, Defendant Sunbridge Regency North Carolina, Inc., d/b/a

Sunbridge Care & Rehabilitation for the Triad ("Sunbridge").  This matter is now

before the court on Sunbridge's motion for summary judgment. [Doc. # 16.]  For

the reasons stated below, summary judgment in favor of the Defendant will be

GRANTED and this action will be DISMISSED.

I.

The facts in the light most favorable to Mr. Brewington are as follows:

Mr. Brewington is an African American male who was first employed by Sunbridge

as a nurse in December 2001.  Sunbridge is a long-term care and rehabilitation

facility located in High Point, North Carolina.  Mr. Brewington was promoted to

Nurse Supervisor in 2005.  As part of his responsibilities as Nurse Supervisor, Mr.

Brewington supervised "the whole building" during his shift. [Doc. # 17, Ex. A at 12.]

According to the complaint, "it was alleged and reported to plaintiff and others that two consenting adult clients were having sex in the facility." [Doc. # 1 ¶ 8(d).] Generally, Sunbridge residents who are consenting adults have privacy rights and may pursue a physical relationship with one another. [See Doc. # 1 ¶ 8(f).] However, Sunbridge alleges that one of the residents having sex in the facility was mentally incompetent and unable to provide informed consent. As Mr. Brewington acknowledges in his deposition, sexual activity, including mere kissing, between a mentally incompetent patient and another amounts to resident abuse. [Doc. # 17, Ex. B at 20-21.] Mr. Brewington also acknowledges that suspected resident abuse is supposed to be reported to the Director of Nursing. [Doc. # 17, Ex. B at 19-20.]

Alyce Hopping became Administrator of the Sunbridge facility on July 1, 2006. On July 5, 2006, Ms. Hopping received a report that two residents were engaged in sexual conduct, and she began an investigation "to make sure that the relationship and conduct of these residents was between two consenting adults and to make sure that the [Sunbridge] Facility had not violated any duties owed to them . . . ." [Doc. # 18 at 2.] After reviewing the residents' medical files and interviewing six employees, including Mr. Brewington, Ms. Hopping concluded that one of the residents was incompetent, Mr. Brewington had failed to report the

2

sexual conduct to his supervisors, failed to consider whether the residents were competent to consent to sexual activity, and failed to stop the abusive sexual activity by incorrectly relying on privacy rights that only apply to competent adult residents.

On July 7, 2006, Mr. Brewington was discharged by Ms. Hopping.[1]  Mr. Brewington was told at the time of his termination that he was discharged because of inappropriate sexual behavior that occurred with the incompetent resident. [Doc. # 1 ¶ 8(c).]  However, Mr. Brewington argues that he "was treated differently because of his race and sex."  [Doc. # 1 ¶ 8(k).]  Specifically, Mr. Brewington claims that "[t]he alleged sexual conduct was reported to other supervisory employees, namely, Causasian females, who were not terminated." [Doc. # 1 ¶ 8(h).]  This is the sole evidence of discrimination that Mr. Brewington offers in his response opposing Sunbridge's motion for summary judgment.

After exhausting his administrative remedies with the Equal Employment Opportunity Commission, Mr. Brewington filed suit on December 29, 2006, claiming that he was discriminated against because of his race and gender in

---

[1]According to paragraph 18 of Ms. Hopping's affidavit, which Mr. Brewington does not dispute, she alone made the decision to terminate Mr. Brewington's employment. [Doc. # 18 ¶ 18.]  Therefore, the potentially discriminatory motivations of any other Sunbridge employees, who were not decisionmakers in determining whether Mr. Brewington should be discharged, are irrelevant.  See Hill v. Lockheed Martin Logistics, Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004) (en banc) (holding that only decisionmakers' actions can form the basis of a Title VII claim based on discriminatory discharge).

3

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Sunbridge filed an Answer on January 24, 2007. [Doc. # 6.] After discovery, Sunbridge filed its motion for summary judgment [Doc. # 16] on October 5, 2007. On November 19, 2007, Mr. Brewington filed a response [Doc. # 27], and on December 4, 2007, Sunbridge filed a reply [Doc. # 29]. This matter is now ripe for consideration.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

III.

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee or discriminate in "compensation, terms, conditions, or privileges of employment" because of race or gender.  42 U.S.C. § 2000e-2(a)(1).  In order to establish a claim of race or gender discrimination under Title VII or 42 U.S.C. § 1981 and avoid summary judgment, a plaintiff may proceed with two avenues of proof.  First, the plaintiff may provide direct or circumstantial evidence that "discrimination motivated the employer's adverse employment decision."  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc).  Second, in the absence of evidence of intentional discrimination, the plaintiff may proceed by invoking a presumption of discrimination with the burden-shifting proof scheme established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Hill, 354 F.3d at 285.

Under McDonnell Douglas, a plaintiff's prima facie case of discrimination creates an inference that the employment action was based on unlawful discrimination.  To establish a prima facie case of discrimination in the context of discriminatory discharge, a plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred

5

"under circumstances which give rise to an inference of unlawful discrimination."

E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001).

If the plaintiff can establish a prima facie case, the employer must then give a legitimate, nondiscriminatory reason for its action in order to rebut the inference of discrimination.   McDonnell Douglas, 411 U.S. at 802.  If the employer presents such a reason, the plaintiff can still prove discrimination by showing that the stated reason is a mere pretext for a decision motivated by discrimination.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); McDonnell Douglas, 411 U.S. at 804.  However, if a plaintiff fails to establish a prima facie case of discrimination or fails to raise a genuine factual dispute concerning the employer's legitimate and non-discriminatory explanation for the alleged discriminatory act, the defendant is entitled to summary judgment.  Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir.1995).

Mr. Brewington does not proffer evidence under the first avenue of proof that Sunbridge intentionally discriminated against him; rather, he proceeds under the McDonnell Douglas framework.[2]  Under this burden-shifting framework, it is unnecessary for the Court to determine whether Mr. Brewington has provided sufficient evidence to support a prima facie case for race or gender discrimination. Even assuming that Mr. Brewington has established a prima facie case for race or

_____

[2] [See Doc. # 27 at 3-5 (arguing solely to support the elements of a prima facie case under McDonnell Douglas in the response to Sunbridge's motion for summary judgment).]

6

gender discrimination, he has failed to dispute Sunbridge's non-discriminatory

explanation for discharging him. Ms. Hopping's affidavit provides Sunbridge's

stated reasons for terminating Mr. Brewington's employment:

> Based on Mr. Brewington's failure to bring any of the
> information that I concluded he had received to the
> attention of his supervisors, his failure to consider
> whether the female resident was capable of consenting
> to the activity, his failure to take any steps to notify the
> female resident's responsible party, his failure to
> intervene to stop the activity given what he should have
> concluded about her competency, given his response to
> me during the investigation and his incorrect reliance on
> "privacy rights"–any one of which would have been
> adequate grounds to fire someone at his level of
> management responsibility–I decided to end Mr.
> Brewington's employment.

[Doc. # 18 ¶ 17.]

Mr. Brewington argues that a similarly situated Caucasian female, Meg

Pierce, also knew of the alleged sexual activity between these residents but was

not terminated. According to Sunbridge's response to the EEOC investigation,

which was attached to Mr. Brewington's response,

> Meg Pierce was disciplined following the investigation,
> but she did not lie to attempt to conceal her knowledge
> of the resident conduct during the investigation. Further,
> Ms. Pierce reported the incidents she was aware of to
> Mr. Brewington and to the former Director of Nursing. . .
> . Ms. Pierce again failed to appropriately report an
> incident and was terminated from employment.

[Doc. # 27, Ex. B at 3.] Even assuming Ms. Pierce was a similarly situated

employee, Sunbridge has provided its reason for initially treating Mr. Brewington

7

and Ms. Pierce differently after the investigation: Ms. Pierce reported the sexual conduct to Mr. Brewington and the former Director of Nursing, and Ms. Pierce did not lie during the investigation. Mr. Brewington has not forecast any evidence to dispute Sunbridge's reasons for the immediate termination of Mr. Brewington and the later termination of Ms. Pierce. In sum, Mr. Brewington has not offered sufficient evidence that his termination was a mere pretext for discrimination based on race or gender. Sunbridge's Motion for Summary Judgment is GRANTED, and the Title VII claim is DISMISSED.

IV.

For the reasons set forth above, it is ORDERED that the Defendant's motion for summary judgment [Doc. # 16] be GRANTED. It is further ORDERED that this action be DISMISSED.

This, the 18th day of December, 2007.

                /s/ N. Carlton Tilley, Jr.
                United States District Judge

8